## In re MALLINCKRODT. CHEMICAL WORKS.

### (Circuit Court, E. D. Missouri, E. D. March 13, 1894.)

#### No. 3,749.

CUSTOMS DUTIES—CLASSIFICATION—HYDROCHLORATE OF COCAINE.
  Hydrochlorate or muriate of cocaine is dutiable as an "alkaloid salt," under paragraph 76 of the act of October 1, 1890 (26 Stat. 570), rather than as a "medicinal preparation in the preparation of which alcohol is used," under paragraph 74; the former being the more specific description.

This was an application by the collector and surveyor of the port of St. Louis for a review of the decision of the board of general appraisers in respect to the rate of duty on certain merchandise imported by the Mallinckrodt Chemical Works.

George D. Reynolds, Dist. Atty., and E. P. Johnson, Asst. Dist. Atty., for the United States.
Everett W. Pattison, for respondent.

THAYER, Circuit Judge. It is a defect in the existing tariff law, and in preceding tariff laws of a like character which impose duties on a multitude of articles, that the language employed to describe dutiable articles is frequently so general that the same article is sometimes embraced by the descriptive language found in two or more paragraphs of the same schedule of the act. The case at bar furnishes a good illustration of the defect in the statute, and of the difficulties encountered in applying it, which would have been avoided had congress, in every instance, described dutiable articles by the names ordinarily applied to them in commerce. The article in question is "hydrochlorate or muriate of cocaine." To chemists this drug is known as an "alkaloid salt," consisting of hydrochloric acid in combination with cocaine, which is, chemically speaking, an alkaloid. The chemical compound in question is also a medicinal preparation, which is prepared for use by treating crude cocaine with hydrochloric acid to form the salt, and by washing it with alcohol to remove certain impurities found in crude cocaine. Now, paragraph 74 of Schedule A of the tariff act of October 1, 1890 (26 Stat. 570), imposes a duty of 50 cents per pound on "medicinal preparations, including medicinal proprietary preparations, of which alcohol is a component part, or in the preparation of which alcohol is used, not specially provided for in this act," while paragraph 76 of the same schedule imposes a duty of 25 per cent. ad valorem on "products or preparations known as alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combina-

tions of the foregoing, and all chemical compounds and salts not specially provided for in this act." The correct chemical name of the drug in question is not found in the tariff act of October 1, 1890, and it becomes necessary to decide whether it is best described and should be assessed under paragraph 74, supra, as a "medicinal preparation in the preparation of which alcohol is used," or, under paragraph 76, supra, as an "alkaloid salt." The difference in the sum to be paid to the government as a duty, dependent upon the decision of the question whether it is dutiable at 50 cents per pound or at the rate of 25 per cent. ad valorem, amounts on this importation to $2,195.35. It may be conceded that the description contained in both of the foregoing paragraphs is generic, and that neither of the descriptions is sufficiently specific to identify the article in question from many other drugs and chemical compounds. Nevertheless it is necessary to decide which description is most specific, the rule being, in this class of cases, to assess the duty under that clause of the schedule which contains the most accurate description. The term "alkaloid," as used among chemists, has a definite meaning, and is applied to a class of compounds found in plants which have the properties of an alkali in their capacity, or tendency to neutralize acids. It is true that there are very many alkaloids, but the name is applied to a specific group of organic substances, and to the mind of a chemist the word has a precise signification; much more so, in my judgment, than the phrase a "medicinal preparation in the making of which alcohol is used." This latter expression, considered as a definition of any particular article, is about as vague and uncertain as it could well be made. By the language employed in paragraph 76, supra, congress has manifested an intention to impose a duty of 25 per cent. ad valorem on all of a specific class of organic substances or compounds, known as "alkaloids" or "alkaloid salts," except where a duty is imposed on certain compounds belonging to that class by the name in which they are known to the trade.

Another view of the case at bar is also equally decisive. In Hirzel v. U. S., 7 C. C. A. 491, 58 Fed. 772, the circuit court of appeals for the Second circuit have held (affirming the decision of the circuit court for the Southern district of New York; 53 Fed. 1006) that crude cocaine is dutiable, under paragraph 76, supra, as an alkaloid, at the rate of 25 per cent. ad valorem, and a duty at that rate is now being imposed, and, under the decision aforesaid, will continue to be imposed, at the port where most of the crude cocaine finds its entrance into the United States. The hydrochlorate of cocaine which figures in this case is a finished product, and it is hardly probable, in view of the general purpose and scope of the act of October 1, 1890, that congress intended to admit the finished product into the country at a less rate of duty than had been imposed on crude cocaine. It is desirable, for many obvious reasons, that the construction of the tariff laws should be uniform throughout the country, and, in view of the decision last above referred to, it can hardly be doubted that in the Second circuit the article now in question will hereafter be classified for duty under paragraph 76.

For the foregoing reasons the government's appeal from the decision of the board of general appraisers must be sustained, and it is so ordered.